RECORD NUMBER: 14-2219

# United States Court of Appeals

### *for the*

# Fourth Circuit

SHADOW MANAGEMENT, INC., d/b/a PLATINUM PLUS,

*Appellee,*

– v. –

JORDAN M. TONKIN,

*Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA AT COLUMBIA

# BRIEF OF APPELLEE

CHRISTOPHER SCOT MCDONALD
RICHARD JAMES MORGAN
MCNAIR LAW FIRM, P.A.
1221 Main Street
P.O. Box 11390
Columbia, S.C. 29211
(803) 799-9800

*Counsel for Appellee*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No.  14-2219          Caption:  Jordan M. Tonkin v. Shadow Management, Inc. d/b/a Platinum Plus

Pursuant to FRAP 26.1 and Local Rule 26.1,

Shadow Management, Inc. d/b/a Platinum Plus
(name of party/amicus)


who is _____appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.      Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO


2.      Does party/amicus have any parent corporations?                              ☐YES ☑NO
        If yes, identify all parent corporations, including grandparent and great-grandparent corporations:



3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                                      ☐YES ☑NO
        If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: s/Richard J. Morgan      Date: November 10, 2014

Counsel for: Defendant - Appellee

## CERTIFICATE OF SERVICE
****************************

I certify that on November 10, 2014 the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

s/Richard J. Morgan        November 10, 2014
(signature)        (date)

- 2 -

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................ ii

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ............................ 1

STATEMENT OF THE CASE ............................................................. 2

SUMMARY OF ARGUMENT .............................................................. 12

ARGUMENT ............................................................................... 14

I.  Title VII's administrative requirements are mandatory ..................... 16

II.  In the Fourth Circuit, it is settled that failure to exhaust administrative remedies in a Title VII action divests a federal court of subject matter jurisdiction to hear a claim ............................ 19

A.  Tonkin misapplies the concept of relation back, created by *Jones* and *Nealon v. Stone*, to the facts of her case, and her claim fails in any event because she knew of the facts giving rise to her retaliation claim prior to filing the EEOC Charge but declined to charge retaliation ......................................................... 21

B.  *Zipes*, *Arbaugh* and *Laber* do not alter this Court's Title VII jurisprudence related to exhaustion of administrative remedies ........................................... 26

III.  Shadow Management is entitled to affirmance on the additional/alternative grounds raised at all stages of the District Court proceedings ............................................. 35

CONCLUSION ............................................................................. 38

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Arbaugh v. Y & H Corp.*,
   546 U.S. 500 (2006)...............................................................*passim*

*Balas v. Huntington Ingalls Indus.*,
   711 F.3d 401 (4th Cir. 2013) .................................................*passim*

*Beane v. Agape Mgmt. Servs.*,
   No. 3:08-3445-CMC-PJG, 2009 U.S. Dist. LEXIS 70573 (D.S.C.
   June 23, 2009)...............................................................................19

*Chisholm v. U.S. Postal Serv.*,
   665 F.2d 482 (4th Cir. 1981) ........................................24, 25, 28

*Davis v. North Carolina Dep't of Corrections*,
   48 F.3d 134 (4th Cir. 1995) ..........................................27, 29, 30

*Del. State College v. Ricks*,
   449 U.S. 250 (1980).....................................................................23

*Demetres v. East West Constr., Inc.*,
   No. 14-1180, 2015 U.S. App. LEXIS 629 (4th Cir. Jan. 15, 2015) ..............32

*Drager v. PLIVA USA, Inc.*,
   741 F.3d 470 (4th Cir. 2014) ................................................ 35-36

*Edelman v. Lynchburg College*,
   228 F.3d 503 (4th Cir. 2000) ..............................................29, 30

*Evans v. Technologies Applications & Serv. Co.*,
   80 F.3d 954 (4th Cir. 1996) ..................................................19, 24

*Jones v. Calvert Grp., Ltd.*,
   551 F.3d 297 (4th Cir. 2009) .................................................*passim*

*Laber v. Harvey*,
   438 F.3d 404 (4th Cir. 2006) .................................................*passim*

*Malhotra v. Cotter & Co.*,
   885 F.2d 1305 (7th Cir. 1989) ....................................................22

*Miles v. Dell, Inc.*,
   429 F.3d 480 (4th Cir. 2005) ..........................................19, 20, 24

ii

*National Railroad Passenger Corp. v. Morgan*,
    536 U.S. 101 (2002)......................................................................18, 22, 28

*Nealon v. Stone*,
    958 F.2d 584 (4th Cir. 1992) ...................................................21, 22

*Orem v. Rephann*,
    523 F.3d 442 (4th Cir. 2008) .....................................................36

*Smith v. First Union Nat'l Bank*,
    202 F.3d 234 (4th Cir. 2000) .........................................15, 24, 25

*Stehle v. Gen. Mills Rest., Inc.*,
    875 F. Supp. 320 (D.S.C. 1994) ................................................19

*Sydnor v. Fairfax County Va.*,
    681 F.3d 591 (4th Cir. 2012) .........................................15, 24, 25

*Wilson v. Dimario*,
    No. 97-2252, 1998 U.S. App. LEXIS 6574, 1998 WL 168346 (4th
    Cir. 1998).........................................................................20

*Zipes v. Trans World Airlines, Inc.*,
    455 U.S. 385 (1982)................................................................*passim*

**Statutes & Other Authorities:**

29 U.S.C. § 1331 ...........................................................................34

42 U.S.C. § 1981 ...........................................................................34

42 U.S.C. § 1983 ...........................................................................34

42 U.S.C. § 1985 ...........................................................................34

42 U.S.C. § 2000e-5 .......................................................................19

42 U.S.C. § 2000e-5(b) ..................................................................17

42 U.S.C. § 2000e-5(e)(1)...............................................................16

42 U.S.C. § 2000e-5(f)(3)...............................................................34

Fed. R. App. P. 30(a)(2)..................................................................3

Fed. R. Civ. P. 12(b)(1).............................................................*passim*

Fed. R. Civ. P. 50 ..........................................................4, 10, 36, 37

Fed. R. Civ. P. 59 ..........................................................4, 10, 36, 37

iii

## <u>STATEMENT OF THE ISSUES PRESENTED FOR REVIEW</u>

Whether failure to exhaust administrative remedies in a Title VII action resulting from a claimant's failure to allege a known claim in his or her EEOC charge of discrimination fails to satisfy a jurisdictional prerequisite to asserting such claim in federal court.

## STATEMENT OF THE CASE

Jordan Tonkin ("Tonkin" or "Appellant") presents her case and facts *in medias res*, or "beginning in the middle." This narrative device, often employed by fiction writers, commences a narrative at a story's point of conflict and then reflects on the prior events that precipitated that conflict. The purpose of this form of narration is to give its reader the appropriate context by which to understand the importance of those earlier events.

Here, Tonkin apparently begins in the middle not as a means to emphasize events prior to the beginning of her narrative, but to obscure them. Shadow Management Company, Inc. ("Shadow Management" or "Appellee") thus presents its own statements of the case and facts because it is precisely those prior events that created the legal basis for the District Court's legally correct ruling.

Tonkin begins her statement with the filing of her complaint on January 20, 2012 (JA 9), but the narrative correctly begins, at latest, months prior to Tonkin's filing of her March 24, 2011[1] EEOC charge of discrimination (the "EEOC Charge") (Appellant's Brief at 2; JA 130). In her EEOC Charge, Tonkin did not raise the claim of retaliation that is the subject of this appeal, despite the fact that both the ***alleged protected activity and adverse employment action underlying the***

---

[1] Tonkin's amended complaint states that her EEOC Charge was filed one week later on April 1, 2011 (JA 147), but Shadow Management cites the date upon which Tonkin executed the EEOC Charge because no file date is indicated on the Appendix copy. The actual filing date is not germane to either party's arguments.

2

***retaliation claim were known to Tonkin and occurred months before the filing of the EEOC Charge***. Thus, although Tonkin had knowledge of the facts giving rise to a retaliation claim as of the filing of her EEOC Charge, she made a tactical decision not to assert this claim in the EEOC Charge or in her January 20, 2012 complaint. (JA 9). Tonkin never exhausted her administrative remedies as to her retaliation claim, and thus the District Court was procedurally and jurisdictionally precluded from hearing it.

Shadow Management consistently asserted these arguments throughout proceedings before the District Court. It opposed Tonkin's motion to amend her complaint to include the uncharged claim of retaliation because Tonkin failed to raise and exhaust administrative remedies. (JA 73-74). In its argument in opposition to the motion to amend, Shadow Management pointed out that the District Court did not have jurisdiction over the retaliation claim because Tonkin did not exhaust administrative remedies. (JA 73-74). It raised these arguments again in support of its motion for summary judgment. (JA 169 and 172). It raised the issues in motions for directed verdict at the conclusion of plaintiff's evidence and defendant's evidence at trial.[2] And finally, Shadow Management raised the

---

[2] Pursuant to Fed. R. App. P. 30(a)(2), the reviewing court may rely on portions of the record not contained in the Appendix. For the Court's convenience, the following are references from the trial transcript in which Shadow Management moved for judgment as a matter of law on the issue of exhaustion of administrative remedies: (TR 154:13-155:4; TR 282:20-284:24).

3

issues in post-trial motions for dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction and alternatively for reconsideration,[3] alteration or amendment of judgment, judgment notwithstanding the verdict and/or for a new trial under Fed. R. Civ. P. 50 and 59. (*See generally* JA 212-220).[4]

On appeal, Tonkin alleges that the District Court erred in dismissing her retaliation claim for lack of subject matter jurisdiction. The District Court's ruling in this matter is proper, though, for several reasons. First, this Court has been very clear that failure to exhaust administrative remedies precludes a district court from asserting subject matter jurisdiction over a Title VII claim. Secondly, the case law cited by Tonkin in support of her argument, which will be discussed in detail, *infra*, presents absolutely no legal basis for undoing a well-settled body of law in the Fourth Circuit addressing this issue.

---

[3] Notably, Tonkin's brief expunges the term "reconsideration" from its characterization of Shadow Management's post-trial motions, referring to the Rules 50 and 59 motions as motions to alter/amend the judgment, judgment notwithstanding the verdict and motion for a new trial. Although Shadow Management can only speculate whether this omission of the term was inadvertent, it is noteworthy that Tonkin has suggested in multiple court filings that the question of subject matter jurisdiction upon which the District Court ruled in this matter was only raised for the first time post-trial, when in reality Shadow Management had referred to Tonkin's failure to exhaust both as a procedural bar and as divesting a federal court of subject matter jurisdiction at <u>every</u> stage of the proceedings.

[4] Shadow Management additionally raised both arguments in its Reply to Plaintiff's Objections to Report and Recommendation. (JA 188).

4

The District Court's ruling in this matter should be affirmed on additional or alternative grounds raised by Shadow Management at every stage of the District Court proceedings. Specifically, whether Tonkin's failure to exhaust administrative remedies is appropriately characterized as a question of subject matter jurisdiction under Rule 12(b)(1), or alternatively as a "jurisdictional prerequisite" or "procedural bar" appropriate for summary judgment or post-trial relief, Shadow Management raised these arguments at every stage of the district court proceedings and requested reconsideration of these arguments post-trial. No matter how characterized, Tonkin's choice to not include retaliation in her EEOC Charge, despite knowing of her claim prior to its filing, should have precluded her retaliation claim in district court. A contrary ruling would render much of Title VII meaningless, as it would allow a claimant to avoid the notice and conciliation goals of the statutory scheme.

**Facts Relevant for Judicial Review of Issues Presented**

Appellant Jordan Tonkin is a former employee of Appellee Shadow Management Company, Inc., doing business as Platinum Plus, an adult entertainment establishment. (JA 146). Tonkin was a "beer tub girl," responsible for selling beer to patrons and procuring credit card cash advances for patrons' use as tip money in the club. (JA 146).

5

In late September 2010,[5] Tonkin and her boyfriend were involved in an altercation with multiple of Shadow Management's patrons in the establishment's parking lot. (JA 123-127). At the time of this incident, Tonkin was approximately three months pregnant. (JA 146). Although the reasons were a disputed factual issue at trial in the matter (Shadow Management presenting testimony that Tonkin was terminated for her role in the altercation,[6] and Tonkin claiming she was placed on involuntary maternity leave at that time), the parties do agree that Tonkin never worked for Shadow Management again after the parking lot altercation. (JA 146; 158). By letter dated November 27, 2010, FrankCrum, Shadow Management's third-party payroll company (the "FrankCrum Letter"), informed Tonkin that she had been terminated effective October 2, 2010 for payroll inactivity, although Tonkin claims that she received this letter on December 19, 2010. (JA 30).

Three days prior to the date Tonkin claims she received the FrankCrum Letter (December 16, 2010), Tonkin's counsel delivered a letter to Shadow Management asserting that Shadow Management had violated Tonkin's rights under Title VII by placing her on involuntary maternity leave and demanding certain recompense for this claim (the "Tonkin Demand"). (JA 147).

---

[5] The exact date, which was between September 23 and 25, 2010, was a matter of dispute between the parties at trial but is not germane to the legal issue before this Court.

[6] At trial, Shadow Management presented evidence that this incident was not isolated, and that Tonkin's boyfriend had been involved in other disruptive incidents at the establishment previously.

6

Shadow Management's counsel responded to the Tonkin Demand by letter dated January 21, 2011, stating therein that Tonkin had been terminated for her involvement in the parking lot altercation and had not been placed on maternity leave. (JA 147).

On March 24, 2011, Tonkin filed her EEOC Charge, in which she set forth a claim only for sex discrimination on account of her pregnancy. She made no allegation of retaliation. (JA 128).

After the lapse of the statutory 180-day EEOC investigation/conciliation period, Tonkin's counsel requested and received a notice of right to sue prior to EEOC's rendering any findings in the matter, which the EEOC summarily issued. (JA 147). On January 20, 2012, Tonkin timely filed a complaint in the United States District Court for the District of South Carolina, alleging one claim for pregnancy discrimination. She did not allege retaliation in her complaint. (JA 9-13).

On January 15, 2013,[7] Tonkin moved to amend her complaint to include a claim for retaliation. (JA 20-28). Shadow Management opposed amendment of the

---

[7] This date was well beyond the 300-day statute of limitations for asserting a Title VII claim, whether the limitations period was measured from the date Tonkin claims she received the termination letter from Shadow Management's payroll company (December 19, 2010; *see* JA 23) or the date Shadow Management's counsel responded to the Tonkin Demand and stated that she had been terminated for her involvement in the parking lot incident (January 21, 2011; *see* JA 147). Termination is a discrete event.

complaint on several grounds, among which were that Tonkin's failure to exhaust her administrative remedies by choosing not to charge a known claim of retaliation served as a "procedural bar" and divested the District Court of subject matter jurisdiction to hear the retaliation claim. (JA 73-74). The magistrate granted Tonkin's motion to amend over Shadow Management's objections. (JA 3).

On March 18, 2013, Tonkin filed an amended complaint, the only substantive modification from the original being the addition of Tonkin's claim for retaliation. (JA 145-149). In relevant part, the amended complaint alleged the following regarding retaliation:

17. On December 16, 2010, Plaintiff's attorney hand delivered to Defendant's facility a letter addressed to the owner seeking a resolution to avoid a formal legal claim and cautioning that if the lengthy formal legal process was commenced that Plaintiff would "return to her position after the birth of the child with the law's protection against any retaliation against her."

18. Defendant became upset with Plaintiff for asserting her Title VII rights.

19. By letter dated January 21, 2011, Defendant's attorney told Plaintiff's attorney that Plaintiff's employment by Defendant was terminated.

…

29. The letter of Plaintiff's attorney to Defendant on December 16, 2010 constitutes protected activity within the meaning of Title VII.

30. The decision to terminate Plaintiff's employment was made after receipt of and in response to the December 16, 2010 letter.

8

(JA 147-148).

The magistrate ultimately recommended to the District Court that Shadow Management's motion for summary judgment on Tonkin's pregnancy discrimination claim be denied, but that Shadow Management should be entitled to summary judgment on Tonkin's retaliation claim. (JA 173). The magistrate recommended summary judgment on the retaliation claim because Tonkin's failure to seek re-employment with Shadow Management precluded a showing of an adverse employment action. (JA 180). The District Court did not follow the magistrate's recommendation as to the retaliation claim, and both claims were tried to a jury. (JA 192-194). During trial, Shadow Management moved for judgment as a matter of law at the conclusion of the Tonkin's and its own case on the issue of retaliation,[8] specifically arguing that Tonkin's failure to exhaust was a procedural bar to the claim and that the court lacked subject matter jurisdiction to hear it. (JA 263). Those motions were denied.

In its jury charges on the retaliation claim that were agreed to by both parties, the District Court instructed the jury that it could impose liability for retaliation if the Tonkin Demand (the alleged protected activity), delivered on

---

[8] *See* footnote 2, *supra*, and accompanying references to trial transcript.

December 16, 2010, was the direct and only cause for the alleged adverse employment action (Tonkin's termination).[9] (JA 250).

The jury found that Tonkin had not met her burden on the pregnancy discrimination claim, finding in favor of Shadow Management. (JA 198). However, it awarded Tonkin $50,000 in punitive damages on her retaliation claim. (JA 198). Post-trial but prior to the court's entry of judgment in the matter, Shadow Management moved the court for reconsideration, alteration or amendment of the judgment or a new trial under Fed. R. Civ. P. 50 and 59, and for dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). (JA 200-220). The court granted Shadow Management's motion to dismiss for lack of subject matter jurisdiction but declined to rule on its other arguments. (JA 242-252).

Because the timeline in this matter is so crucial to understanding the legal issue before this Court, it is set forth in bulleted format for convenience as follows:

- September 23-25, 2010: Parking lot altercation occurs; Tonkin's employment with Shadow Management ceases. (JA 64; 67; 147).

- November 27, 2010: Date of FrankCrum Letter from Shadow Management's payroll administrator notifying Tonkin that she was terminated effective October 2, 2010 for payroll inactivity. (JA 29).

- December 16, 2010: Tonkin's counsel delivers the Tonkin Demand to Shadow Management regarding Tonkin's allegation of Title VII violation.

---

[9] During jury deliberations, the jury presented a question to the court regarding Shadow Management's customary practice of rehiring fired employees, and the court instructed the jury that it was not to consider failure to rehire because Tonkin had not raised this argument in court filings or argued it at trial. (JA 217).

This event was alleged to have been the protected activity by Tonkin and was charged as such to the jury at trial. (JA 11).

- December 19, 2010: Date Tonkin claims to have received FrankCrum Letter. This letter is Tonkin's first written notification of her termination by Shadow Management. (JA 23-24).

- January 21, 2011: Shadow Management counsel responds to Tonkin Demand, denying allegations and stating that Tonkin had been terminated for her involvement in the September 2010 parking lot incident. (JA 147).

Tonkin alleged that her termination, of which she was notified at least two months prior to her EEOC Charge, was the adverse employment action giving rise to her retaliation claim (and the District Court charged the jury in this fashion). (JA 148).

The remainder of the germane events are as follows:

- March 24, 2011: Tonkin files her EEOC Charge for pregnancy discrimination. The EEOC Charge does not include a claim for retaliation even though the alleged protected activity and adverse employment action occurred prior to the filing. (JA 128).

- January 20, 2012: Tonkin files her complaint, alleging only pregnancy discrimination and not retaliation. (JA 9-13).

- January 15, 2013:[10] Tonkin moves to amend her complaint to include a claim for retaliation, alleging her December 16, 2010 letter served as protected activity and that her termination was a retaliatory adverse employment action based on her protected activity. (JA 20-28).

- March 18, 2013: Tonkin files her amended complaint, adding a claim for retaliation. (JA 145-149).

---

[10] This date is 394 days after the alleged protected activity occurred, and either 391 or 358 days after receipt of the two correspondences by FrankCrum and Shadow Management's counsel that she had been terminated, respectively.

# SUMMARY OF ARGUMENT

Appellant Jordan Tonkin failed to allege a known retaliation claim in her EEOC Charge and chose not to assert that claim in an amended or separate charge of discrimination. Instead, Tonkin alleged retaliation for the first time in her amended complaint to the District Court well more than a year after her alleged retaliatory termination occurred. Tonkin's known pre-charge retaliation claim does not relate back to the pregnancy discrimination claim asserted in her EEOC Charge, and cannot be reasonably expected to follow from the EEOC's investigation of her pregnancy discrimination claim because the retaliation claim is based upon different facts and alleges a different theory of liability. Accordingly, Tonkin failed to exhaust administrative remedies, and the District Court correctly dismissed the claim for lack of subject matter jurisdiction under *Balas v. Huntington Ingalls Indus.*, 711 F.3d 401, 406 (4th Cir. 2013) and *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 301 (4th Cir. 2009).

Tonkin cites three cases, *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 511 (2006), *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) and *Laber v. Harvey*, 438 F.3d 404 (4th Cir. 2006) (*en banc*), for her argument that failure to exhaust in a Title VII is not jurisdictional, but each of these three cases is factually and legally distinguishable and do not affect this Court's failure-to-exhaust rulings.

12

In any event, Tonkin's clear failure to exhaust administrative remedies as to her retaliation claim entitles Shadow Management to affirmance of the District Court's ruling whether on jurisdictional or other grounds. Shadow Management moved this court at every stage of the District Court proceedings for judgment as a matter of law on Tonkin's retaliation claim, and the question was clearly before the District Court post-trial not only under Fed. R. Civ. P. 12(b)(1), but under Rules 50 and 59 as well (reconsideration, alteration/amendment of judgment, judgment notwithstanding the verdict and alternatively for a new trial). The District Court dismissed Tonkin's retaliation claim under Rule 12(b)(1) and declined to rule on Shadow Management's other argument that failure to exhaust is also a procedural bar to proceeding in district court. Thus, the District Court's ruling should be affirmed on these additional or alternative grounds because failure to exhaust administrative remedies, no matter how characterized, precludes a district court from hearing a Title VII claim.

# **ARGUMENT**

Tonkin bases her appeal from the District Court's dismissal of her Title VII retaliation claim for lack of subject matter jurisdiction on what she wishes the law of this circuit to be and not what it actually is. The facts are clear that, no later than January 21, 2011, more than two months before filing the EEOC Charge, Tonkin and her counsel possessed all knowledge that would have allowed them to assert retaliation in any charge of discrimination. (JA 147). They chose not charge retaliation in either her original EEOC Charge or by amending that charge. Further, Tonkin and her counsel requested the issuance of a notice of right to sue prior to the conclusion of the EEOC's investigation of the matter, and as a result of her prosecution of the case in this manner, there was nothing that would have allowed the EEOC to broaden the scope of the original EEOC Charge beyond the pregnancy discrimination claim that she alleged.

Tonkin first alleged retaliation in a motion to amend her complaint filed well more than a year after the date Tonkin knew the alleged discrete retaliatory event occurred. (JA 20-28). Thus, she failed to exhaust administrative remedies and the District Court did not have subject matter jurisdiction over Tonkin's retaliation claim. The District Court's dismissal of the claim for lack of subject matter jurisdiction was therefore appropriate.

14

Tonkin obfuscates the chronology of the facts in an apparent attempt craft an argument that her retaliation claim "related back" to her original pregnancy discrimination claim. This Court has been clear, and logic itself dictates, that a Title VII claim for retaliation relates back to a previously charged claim only when the retaliation occurs at some point <u>post</u>-charge. In this matter, Tonkin herself alleged that the retaliatory conduct occurred months <u>prior to</u> her EEOC Charge. (JA 147-148 (alleging in amended complaint that protected activity and adverse employment action occurred in December 2010 and January 2011, respectively)). That is, Tonkin's retaliation cannot relate <u>back</u> to her EEOC Charge, which she filed <u>after</u> the events giving rise to her retaliation claim.

Blended into Tonkin's relation-back argument is an assertion that her retaliation claim related to or grew out of her prior EEOC Charge so as to fit within the framework of *Sydnor v. Fairfax County Va.*, 681 F.3d 591 (4th Cir. 2012) and *Smith v. First Union Nat'l Bank*, 202 F.3d 234 (4th Cir. 2000). (Appellant's Brief at 11). As the District Court correctly pointed out, this argument is meritless because Tonkin's EEOC Charge "includes no claims or descriptions of retaliation by any actor. Instead, Plaintiff's EEOC charge checked the disability box and described pregnancy discrimination in her EEOC charge, without making any mention of retaliation discrimination." (JA 250).

15

Tonkin additionally cites a trio of cases, *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 511 (2006), *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) and *Laber v. Harvey*, 438 F.3d 404 (4th Cir. 2006) (*en banc*), for the proposition that failure to exhaust administrative remedies does not implicate the subject matter jurisdiction of a district court to hear an uncharged claim. As will be discussed in Argument Section II.B, *infra*, these cases are readily distinguishable, and have in fact been distinguished by this Court in cases such as this one in which a claimant has failed to exhaust administrative remedies.

Tonkin's uncharged retaliation claim was nothing more than an attempted end-run around Title VII's mandatory notice and conciliation provisions and an effort to undo a tactical decision she made not to assert retaliation in her EEOC Charge. If Tonkin were to receive the relief she prays in this appeal, much of Title VII would be rendered a nullity.

## I.    Title VII's administrative requirements are mandatory.

Examination of Title VII's statutory language brings the legal error of Tonkin's arguments into sharp relief. 42 U.S.C. § 2000e-5(e)(1) states that a

> charge under this section ***shall*** be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter, except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such

16

practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred....

(emphasis added). Subsection (b) of Section 2000e-5 addresses the requirements of the administrative charge and the purpose of the administrative process, stating as follows:

Whenever a charge is filed by or on behalf of a person claiming to be aggrieved, or by a member of the Commission, alleging that an employer, employment agency, labor organization, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, has engaged in an unlawful employment practice, *the Commission shall serve a notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) on such employer*, employment agency, labor organization, or joint labor-management committee (hereinafter referred to as the ''respondent'') within ten days, and shall make an investigation thereof. *Charges shall be in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires.* Charges shall not be made public by the Commission. If the Commission determines after such investigation that there is not reasonable cause to believe that the charge is true, it shall dismiss the charge and promptly notify the person claiming to be aggrieved and the respondent of its action. In determining whether reasonable cause exists, the Commission shall accord substantial weight to final findings and orders made by State or local authorities in proceedings commenced under State or local law pursuant to the requirements of subsections (c) and (d) of this section. If the Commission determines after such investigation that there is reasonable cause to believe that the charge is true, *the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion.*

42 U.S.C. § 2000e-5(b) (emphases added).

17

These statutory provisions make clear that Title VII claimants are required to file an administrative charge to effectuate two of the primary purposes of the administrative process: (1) to provide notice to employers of the nature and circumstances of the alleged charge; and (2) if the allegations in such charge are deemed to have merit, to allow the EEOC to "eliminate any such alleged employment practice by informal methods of conference, conciliation, and persuasion." *Id.*

It is black-letter law that filing of an administrative charge is a mandatory prerequisite to commencement of a Title VII action in federal court. The U.S. Supreme Court has stated

> the critical sentence of the charge filing provision is: "A charge under this section *shall be filed* within one hundred and eighty days *after the alleged unlawful employment practice occurred*." § 2000e-5(e)(1) (emphasis added). The operative terms are "shall," "after . . . occurred," and "unlawful employment practice." "Shall" makes the act of filing a charge within the specified time period mandatory.

*National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002). In this matter, Tonkin knew of facts giving rise to a retaliation claim either as of the date she claimed she received her first notice of termination in the FrankCrum Letter (December 19, 2010) (JA 23-24) or as of the date Shadow Management's counsel responded to the Tonkin Demand (January 21, 2011). (JA 147). She chose not to exhaust administrative remedies by setting forth a retaliation claim in her EEOC Charge, thereby circumventing the notice and conciliation purposes plainly set

18

forth on the face of Section 2000e-5. Accordingly, the District Court's ruling honored the stated purpose of Title VII by dismissing Tonkin's retaliation claim for lack of subject matter jurisdiction.

## II.    In the Fourth Circuit, it is settled that failure to exhaust administrative remedies in a Title VII action divests a federal court of subject matter jurisdiction to hear a claim.

As a basic proposition, claims outside the scope of an EEOC charge of discrimination are not sustainable in federal court. *See Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996) (affirming district court dismissal of Title VII claims outside the scope of an EEOC charge). For a federal court to hear a Title VII claim, that claim must have been stated on the face of the administrative charge or must "have reasonably been expected to follow from an administrative investigation of that charge";[11] otherwise, a court does not have subject matter jurisdiction to hear it. *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 301 (4th Cir. 2009); *Miles v. Dell, Inc.*, 429 F.3d 480, 491-92 (4th Cir. 2005). In *Miles*,

---

[11] The "reasonably expected to follow" principle applies to claims derived from administrative investigation only. *Beane v. Agape Mgmt. Servs.*, No. 3:08-3445-CMC-PJG, 2009 U.S. Dist. LEXIS 70573, at *6-12 (D.S.C. June 23, 2009) (quoting *Stehle v. Gen. Mills Rest., Inc.*, 875 F. Supp. 320, 323 (D.S.C. 1994) for the proposition that "a 'civil suit under Title VII is limited to discrimination charged in the report to the EEOC or to **discrimination actually found** by the EEOC upon investigation of the original charge.'" (emphasis added)). In this matter, Plaintiff made the conscious choice to terminate the EEOC investigation by requesting a Notice of Right to Sue prior to the conclusion of the EEOC's investigation, which did not indicate retaliation.

19

this Court stated that a retaliation claim cannot reasonably follow from an EEOC charge if the retaliation claim is not specifically referenced. *Id.*

As Tonkin correctly pointed out in her Appellant's Brief, the District Court relied on *Jones* in dismissing her case for lack of subject matter jurisdiction. In *Jones,* this Court simply and unequivocally stated the controlling rule as follows: "Importantly, a failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim." *Jones*, 551 F.3d at 301. This Court recently affirmed *Jones'* failure-to-exhaust rule in *Balas v. Huntington Ingalls Industries*, stating the following regarding administrative exhaustion in a Title VII action:

> We first take up Balas's argument that the district court erred in considering only her amended EEOC charge, and not the contents of her intake questionnaire or the two letters she submitted to the EEOC. ***The import of her argument derives from the fact that federal courts lack subject matter jurisdiction over Title VII claims for which a plaintiff has failed to exhaust administrative remedies.***

711 F.3d 401, 406 (4th Cir. 2013) (emphasis added) (citing *Jones*, 551 F.3d at 300); *see also Wilson v. Dimario*, No. 97-2252, 1998 U.S. App. LEXIS 6574, 1998 WL 168346, at *2 (4th Cir. 1998) (stating same rule). Of course, Tonkin ignores *Balas* completely in Appellant's Brief despite knowing of its existence and reaffirmation of *Jones*, choosing instead to criticize the District Court because *Jones* is the only (albeit correct) case for this proposition.

20

**A.    Tonkin misapplies the concept of relation back, created by *Jones* and *Nealon v. Stone*, to the facts of her case, and her claim fails in any event because she knew of the facts giving rise to her retaliation claim prior to filing the EEOC Charge but declined to charge retaliation.**

Tonkin argues that her retaliation claim "related back" to her original pregnancy discrimination claim. This argument is erroneous on its face, because the principle of relation back is expressly limited to events occurring post-charge.

This Court has recognized that a retaliation claim based on post-charge events can be asserted in federal court for the first time if such claim "relates back" to an earlier charged Title VII claim of discrimination. The Fourth Circuit addressed this principle in *Nealon v. Stone*, 958 F.2d 584 (4th Cir. 1992). In that case, this Court addressed the question of whether a Title VII claimant could assert an uncharged retaliation claim in federal court in the first instance if the employee was retaliated against because of his or her filing of the EEOC administrative charge. Adopting the relation-back principle, this Court held that filing of a second EEOC charge for retaliation was not a prerequisite to bringing that claim in federal court, stating the following rationale:

> Having once been retaliated against for filing an administrative charge, the plaintiff will naturally be gun shy about inviting further retaliation by filing a second charge complaining about the first retaliation. . . .We [therefore] join the other circuits that have spoken to the question in adopting the rule that a separate administrative charge is not pre-requisite to a suit complaining about ***retaliation for filing the first charge***.

21

*Id.* at 590 (emphasis added; quoting *Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1312 (7th Cir. 1989)). This Court in *Nealon* stated that the relation-back principle applied to a new claim "growing out of such allegations during the pendency of the case before the Commission," but did not expressly hold that application of the rule was exclusive to this so-called pendency period. *Id.*

This Court's subsequent ruling in *Jones v. Calvert* clarified that the relation-back principle applies to events occurring during all post-charge periods (not just during the pendency of the EEOC investigation) within the relevant statute of limitations. *Jones*, 551 at 301. And salient to Tonkin's claim, *Jones* expressly indicates that relation back applies only to "post-charge events." *Id.* at 303 (comparing the facts of the case at bar to *National Railroad Passenger Corp. v. Morgan*).

At its most basic level, Tonkin's relation-back argument defies any simple test of logic. The phrase "relate back" denotes a temporal relationship between an earlier and later occurrence; specifically in the Title VII context, it defines a legal relationship between the <u>earlier</u> filing of an EEOC administrative charge of discrimination and a <u>later</u> retaliatory adverse employment action that occurred because of the charge's filing. Tonkin asks this court to ignore this required temporal relationship by applying the relation-back principle to alleged known

22

retaliation that occurred <u>before</u> Tonkin's EEOC Charge.[12] In other words, Tonkin is not asking for her retaliation claim to relate <u>back</u>; she is asking for it to relate <u>forward</u>. No case in the Fourth Circuit, and no case in any other jurisdiction, has ever stood for such a proposition.

Thus, assessment of the scope of a Title VII claim requires consideration of events from two relevant periods: pre-charge and post-charge. The following figure summarizes the controlling law for each period:

---

[12]  Tonkin argued before the magistrate and District Court that speculative deposition testimony given by a Shadow Management manager that he might have considered rehiring Tonkin had she requested reemployment (which she had not) was the later event that merited relation-back treatment. However, what Shadow Management might have hypothetically done had the facts of this matter been different has no bearing on the fact that the adverse employment action, Tonkin's termination, occurred months before the filing of her EEOC Charge. Termination is a discrete event that happens upon the effective date of an employee's termination. "The Court [in Morgan] determined that a discrete unlawful employment action, such as termination, 'occur[s]' on the day it takes place, ***regardless of whether it is related to subsequent events*** that are alleged in a timely EEOC charge." *Jones*, 551 F.3d at 303 (emphasis added; quoting *Morgan*, 536 U.S. at 110-13); *see also Del. State College v. Ricks*, 449 U.S. 250, 258 (1980) (stating that adverse employment action occurred, if at all, as of the date tenure for professor was denied and at end of professor's employment term). In the case at bar, the magistrate rejected this evidence because this was not a retaliation for failure to rehire case, and the District Court expressly forbade the jury from considering this speculative testimony because it had no relationship to Tonkin's allegation that she was terminated due to her filing of her EEOC Charge.  (JA 217).



As discussed, Tonkin's retaliation claim cannot relate back under *Nealon* and *Jones* because her retaliation claim was based on known, <u>pre-charge</u> events. Her claim additionally fails because it could not have "reasonably been expected to follow from an administrative investigation" of her EEOC Charge under *Miles*, *Sydnor* and *Smith*. Tonkin argues that her retaliation claim could be reasonably expected to follow from the allegations of her EEOC Charge, but the District Court correctly rejected this argument, stating the following:

> [I]t is clear that Plaintiff's EEOC charge and judicial complaint are not sufficiently similar to fit within the factual circumstances described in the line of cases that include *Sydnor*, *Smith*, and *Chisholm*. Unlike in *Smith*, for instance, the EEOC charge here includes no claims or descriptions of retaliation by any actor. Instead, Plaintiff's EEOC charge checked the disability box and described pregnancy discrimination in her EEOC charge, without making any mention of retaliation discrimination. In her amended complaint and at trial, Plaintiff described protected activity and adverse action in her retaliation claim separately from the pregnancy discrimination claim. Therefore, Plaintiff's EEOC charge and complaint are not "reasonably related" so as to satisfy the second option established in *Evans*. Finally, while Plaintiff's pregnancy retaliation discrimination claim perhaps is similar to her pregnancy discrimination claim in its animus, the fact that Plaintiff listed disability and described pregnancy discrimination in her EEOC charge would not lead the EEOC to

24

investigate retaliation discrimination, which is a distinct theory of liability.

(JA 250-251).

Tonkin alleged in her amended complaint to the District Court and has once again reasserted in her Appellant's Brief that she knew of the discrete adverse employment action (her termination) at least two months <u>prior</u> to the filing of her EEOC Charge. An EEOC investigation cannot "discover" facts that were already known but simply not asserted by a claimant. Additionally, this Court's analysis of the "reasonably expected to follow" principle indicates that this language applies to <u>actual</u> facts discovered in an EEOC investigation; Tonkin chose to terminate the EEOC investigation prior to its completion by requesting a notice of right to sue so that she could proceed on her claim in federal court. And as pointed out by the District Court, *Sydnor*, *Smith* and *Chisholm* do not expand the scope of an EEOC administrative charge to unasserted and unrelated claims that depend on a wholly different theory of liability.

No case in the Fourth Circuit or elsewhere exists to allow a claimant to reconsider tactical choices, nor do they exist to allow for circumvention of Title VII's mandatory administrative framework and process. The District Court did not have subject matter jurisdiction to hear Tonkin's retaliation claim, and its dismissal of that claim should be affirmed.

25

**B.**  ***Zipes***, ***Arbaugh*** **and** ***Laber*** **do not alter this Court's Title VII jurisprudence related to exhaustion of administrative remedies.**

Tonkin argues that failure to exhaust administrative remedies no longer implicates the subject matter jurisdiction of a district court to hear such claim under *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 511 (2006), *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) and *Laber v. Harvey*, 438 F.3d 404 (4th Cir. 2006) (*en banc*). Tonkin asserts that these three cases have implicitly overruled approximately two decades of Fourth Circuit law (even *Jones* and *Balas*, decided well after 2006). This assertion has no merit, as this trio of cases is factually and legally distinct from *Jones*, *Balas* and their predecessors.

Apparently, Tonkin holds the belief that these cases have escaped this Court's notice despite the facts that (a) the Fourth Circuit has cited them in the aggregate more than 150 times; and (b) this Court has explicitly distinguished the facts of the cases from its holdings related to failure to exhaust and subject matter jurisdiction on multiple occasions. Once again, Tonkin asks this Court to reverse the District Court by applying the law as she wishes it to be rather than in the manner in which this Court has consistently applied it for decades.

The underlying premise of Tonkin's subject matter jurisdiction argument, as stated the Summary of Argument of her Appellant's Brief, is that the District Court erred because

26

> [t]he only Fourth Circuit decision relied upon by the District Court that post-dates these cases [*Arbaugh* and *Laber*] is *Jones v. Calvert Group, Limited*, 551 F.3d 297 (4th Cir. 2009). *Jones* does not address *Arbaugh* and *Laber*, and relegates *Zipes* to a footnote, distinguishing it based on *Davis v. N.C. Dep't of Corr.*, 48 F.3d 134 (4ᵗʰ Cir. 1995).

(Appellant's Brief at 10). Notably, Tonkin glosses over the content of the referenced footnote to which *Zipes* was relegated and the text of the analysis that accompanied it, presumably because it argues directly against Tonkin's arguments on appeal. Likewise, Tonkin conveniently omits much of the factual context of *Arbaugh* and *Laber* that cuts against her arguments. And, as previously noted, Tonkin criticizes the District Court's ruling for its reliance on one post-2006 case, *Jones*, for its rule that failure to exhaust deprives a court of subject matter jurisdiction to hear a Title VII claim. However, in making this criticism, Tonkin and her counsel conveniently ignore the fact that this Court affirmed *Jones'* failure-to-exhaust rule again in *Balas*, a 2013 reported case. In short, neither *Zipes*, *Laber*, nor *Arbaugh* provide any basis for overruling the settled law of the Fourth Circuit on Title VII administrative exhaustion.

*Zipes*, a 1982 Supreme Court case, addressed the issue of whether the 90-day statute of limitations for filing an EEOC administrative charge is jurisdictional. *Zipes*, 455 U.S. at 387. Unlike Tonkin's matter which addresses termination (a

discrete adverse employment action),[13] *Zipes* involved a class action alleging pattern/practice discrimination against TWA flight attendants. After a preliminary finding that the attendants' labor union was not an appropriate class representative, TWA moved to amend its complaint to preclude certain members of the class from proceeding on subject matter jurisdiction grounds because they had not timely filed their EEOC administrative charges. *Id.* at 388-89. The Supreme Court held that the statute of limitations was not jurisdictional and that TWA had effectively waived its right to seek dismissal of the untimely claims by asserting this argument for the first time in its amended complaint.[14] *Id.* at 393.

Tonkin's retaliation claim is not one for which she failed to <u>timely</u> exhaust her administrative remedies; she skirted the administrative process completely by never charging the retaliation claim at all. And unlike the circumstances in *Zipes*, where the timely class members provided notice to TWA of the very same pattern/practice discrimination being alleged by the untimely filers and the parties had an opportunity to conciliate this claim, Shadow Management in this matter was deprived of such notice and conciliation opportunities.

---

[13] Termination is a discrete adverse employment action that occurs when the separation actually takes place. *Nat'l Railroad Corp.*, 536 U.S. at 110 and 114.

[14] It should also be noted that this case is fundamentally different than that case at bar because this Court has stated that exhaustion is not required by class members when the named representative has exhausted administrative remedies. *Chisholm v. U.S. Postal Serv.*, 665 F.2d 482, 491 (4th Cir. 1981).

28

Tonkin states that *Jones v. Calvert* "relegates" *Zipes* to a footnote but fails to discuss what this footnote actually says. After citing the rule that failure to exhaust administrative remedies deprives a court of subject matter jurisdiction to hear a claim, this Court in *Jones* stated the following about *Zipes*:

> *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 102 S. Ct. 1127, 71 L. Ed. 2d 234 (1982), is not to the contrary. In *Zipes*, the Court held only that the *untimeliness* of an administrative charge does not affect federal jurisdiction over a Title VII claim, *see Zipes*, 455 U.S. at 393, and *Davis* noted that the holding in *Zipes* was so limited, *see Davis*, 48 F.3d at 140.

*Id.* at 301 n.2 (emphasis in original). This footnote clearly states that *Zipes* applies to an untimely charge and not to a situation such as this one in which remedies were not exhausted at all. Tonkin seems to suggest that this statement's relegation to a footnote connotes an effort to hide the Court's reasoning, but this Court applies the same logic in other cases relied on by Tonkin. For example, in *Edelman v. Lynchburg College*, this Court expressly distinguished cases addressing waiver/tolling when a claimant files an untimely charge on one hand, with a failure to exhaust in which no question of waiver/tolling exists, stating as follows:

> Although we conclude that Edelman failed to timely file a charge of discrimination, we recognize that this failure does not deprive the court of subject matter jurisdiction. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 71 L. Ed. 2d 234, 102 S. Ct. 1127 (1982) ("We hold that filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling."). *But see Davis v. North Carolina*

29

> *Dep't of Corrections*, 48 F.3d 134, 137 (4th Cir. 1995) (discussing
> Title VII's exhaustion requirement in jurisdictional terms).

228 F.3d 503, 511 (4th Cir. 2000). Tonkin erroneously states in her Appellant's

Brief that "[t]he *Davis* decision has been called into doubt by a subsequent panel of

this Court, *Edelman v. Lynchburg College*, 228 F.3d 503, 511 (4th Cir. 2000)."

(Appellant's Brief at 17-18). The above inset quote is the <u>only</u> reference to *Davis*

in *Edelman*, and that quotation clearly uses the "*But see*" signal to distinguish the

facts and law of *Zipes* and *Davis* and not to call *Davis* into question. Tonkin's

statement is a blatant distortion of this Court's analysis of *Zipes*, and it certainly

has considered *Zipes*' effects on its failure-to-exhaust jurisprudence.

Davis itself directly distinguished *Zipes* in the same manner as the Court did

in *Jones*, citing *Zipes* to illustrate the difference between failure to <u>timely file an</u>

<u>administrative charge</u> and <u>failure to exhaust administrative remedies</u>, only the latter

of which implicates the subject matter jurisdiction of a court to hear a Title VII

claim. *Davis v. North Carolina Dep't of Corrections*, 48 F.3d 134, 140 (4th Cir.

1995) (using the "*Compare*" citation signal to denote a distinction between two

lines of cases). Once again, this Court has never read *Zipes* in the way Tonkin

erroneously suggests.

Arbaugh and *Laber* are similarly unavailing to Tonkin's position. Tonkin is

correct that the Supreme Court in *Arbaugh* cautioned against what it referred to as

courts making "drive-by jurisdictional rulings." However, one need only read the

full passage to understand that the very language quoted by Tonkin cuts against her argument. The actual relevant passage from the case is as follows:

> Judicial opinions, the Second Circuit incisively observed, "often obscure the issue by stating that the court is dismissing 'for lack of jurisdiction' when some threshold fact has not been established, without explicitly considering whether the dismissal should be for lack of subject matter jurisdiction or for failure to state a claim." *Da Silva*, 229 F.3d, at 361. We have described such unrefined dispositions as "drive-by jurisdictional rulings"….

*Arbaugh*, 546 U.S. at 511. In other words, the Supreme Court cautioned against using subject matter jurisdiction as a tool for dismissal prematurely when another form of dismissal might be appropriate.

In this matter, there was no threshold fact that had not been established; the case was tried to a jury and dismissed post-trial, so Tonkin's attempt to paint the District Court's ruling in this matter as a "drive-by jurisdictional ruling" is absurd on its face. Additionally, *Arbaugh* had absolutely nothing to do with exhaustion of administrative remedies, instead addressing whether Title VII's employee numerosity requirement was jurisdictional or merely a factual element of the case otherwise meriting dismissal if not satisfied. *Id.* at 510. The Supreme Court ruled that whether an employer had 15 employees such that it was covered by Title VII was not a jurisdictional question. *Id.* at 516. The question before this Court currently is totally unrelated to the question presented in *Arbaugh*, and Tonkin's attempt to contort *Arbaugh*'s applicability to this matter is meritless.

The most recent Fourth Circuit case interpreting *Arbaugh* is instructive as to this principle. In *Demetres v. East West Constr., Inc.*, No. 14-1180, 2015 U.S. App. LEXIS 629, at *2-3 (4th Cir. Jan. 15, 2015) (addressing a non-Title VII matter), this Court cited *Arbaugh* for the following proposition: "A 12(b)(1) motion should be granted if, after engaging in any necessary fact-finding, the court determines that the movant is entitled to judgment as a matter of law." Once again, in this matter there were no open factual issues and the District Court found that Shadow Management was entitled to judgment as a matter of law because Tonkin did not exhaust administrative remedies. Therefore, its ruling was proper and should be affirmed.

*Laber* likewise has no factual common ground with Tonkin's matter and does not alter in any way this Court's analysis in *Balas* and *Jones*. Its facts are virtually opposite from the facts presently before this Court. In *Laber*, the public-sector claimant had filed two charges of discrimination, the first for religious discrimination and the second for age discrimination and retaliation. *Laber*, 438 F.3d at 409-410. The EEOC's Office of Federal Operations awarded Laber relief on the religious discrimination claim but denied the claims for age discrimination and retaliation. Laber filed suit in federal court challenging the sufficiency of the relief awarded under his religious discrimination claim (requesting additional

relief) and the propriety of the EEOC's ruling on his other previously charged claims. *Id.* at 410.

The district court dismissed the request for additional relief on the ground that it lacked subject matter jurisdiction to hear the claim (because religious discrimination was not placed at issue by Laber). Post-judgment, Laber moved for reconsideration and to amend his complaint to put the Army's liability for religious discrimination at issue, but the district court denied the motions. *Id.* On appeal, this Court reversed, ruling that the failure to put religious discrimination at issue was not a jurisdictional defect, and that the district court should have granted Laber's motions for reconsideration and to amend. *Id.*

*Laber* does not address in any way the matter presently at bar, namely whether failure to exhaust administrative remedies for a private-sector Title VII claim deprives a district court of exercising federal jurisdiction over that claim. The claimant in *Laber* set forth all claims in his EEOC charges, thereby giving notice to his employer and engaging in the investigation and conciliation process. In this matter, Shadow Management had no notice of Tonkin's retaliation claim during the EEOC investigation period that was cut short by Tonkin, and therefore it did not receive notice of the retaliation claim and had no opportunity to engage in the conciliation process as required under Title VII. Tonkin subverted the notice and conciliation provisions of Title VII by choosing not to assert a known pre-

33

charge claim for retaliation in her EEOC Charge, and the District Court's dismissal of the claim was proper. *Laber* could not be more factually inapposite to Tonkin's matter.

Finally, Tonkin cites *Laber* and *Arbaugh* together for the proposition that 29 U.S.C. § 1331 provides an independent jurisdictional basis for Title VII claims beyond Title VII's jurisdictional provision, 42 U.S.C. § 2000e-5(f)(3). (*See generally* Appellant's Brief at 13-16). Tonkin's analysis of these cases is incorrect, illustrated by *Jones'* and *Balas'* proceeding *Arbaugh* and *Laber* by three and seven years, respectively. Reading these two lines of cases together, it is clear that engagement in the EEOC administrative process is a prerequisite to the existence of a federal question under Section 1331; if the administrative exhaustion requirement is not met, no federal question can exist. Tonkin treats her retaliation claim as being equivalent to a claim under 42 U.S.C. §§ 1981, 1983 or 1985, none of which contains an administrative exhaustion requirement. As a practical matter, if Tonkin's reading were true, the principle that filing of an EEOC charge is a mandatory prerequisite for filing a Title VII claim in federal court (which has been true since Title VII's inception) would be nullified.

In sum, *Zipes*, *Arbaugh* and *Laber* do not affect the current jurisprudence of this Court holding that the failure to exhaust administrative remedies for a Title VII

claim deprives a court of subject matter jurisdiction to hear that claim. Accordingly, the District Court's ruling was proper and should be affirmed.

### III. Shadow Management is entitled to affirmance on the additional/alternative grounds raised at all stages of the District Court proceedings.

The law of the Fourth Circuit has remained consistent and clear for decades that an employee's failure to exhaust administrative remedies in a Title VII claim divests a district court of subject matter jurisdiction to rule on the unexhausted claim. The inapposite legal authority cited by Tonkin in Appellant's Brief does not alter this Court's rulings on exhaustion and subject matter jurisdiction that were affirmed by this Court as recently as 2013 in *Balas*. However, Shadow Management argued at all phases of the proceedings before the District Court that Tonkin's failure to exhaust administrative remedies as to her retaliation claim was both a procedural and jurisdictional bar to the District Court's rendering a judgment on that claim. Therefore, Shadow Management respectfully requests that this Court affirm the District Court's ruling, as either an additional or alternative affirming ground, that Tonkin's failure to exhaust remedies for her retaliation claim precluded her from asserting or recovering on that claim.

It is a black-letter principle that an appellate court may affirm a district court's ruling on any ground contained in the record, even if that ground was not the basis for the district court's ruling. *Drager v. PLIVA USA, Inc.*, 741 F.3d 470,

474 (4th Cir. 2014); *Orem v. Rephann*, 523 F.3d 442, 449 (4th Cir. 2008). Stated simply, Tonkin did not exhaust her administrative remedies for her retaliation claim, and Shadow Management has asserted throughout that this failure is a procedural bar to the claim and that the District Court lacked subject matter jurisdiction to hear the claim. Accordingly, whether Tonkin's failure to exhaust is properly characterized as a question of subject matter jurisdiction under Rule 12(b)(1); as a jurisdictional prerequisite that is more appropriate for disposition in summary judgment under Rule 56; or otherwise on a judgment as a matter of law during or after trial under Rules 50 or 59, Shadow Management has consistently raised these arguments throughout the District Court proceedings, and it is therefore entitled to affirmance whether based on Rule 12(b)(1) or the other grounds it asserted.

Shadow Management opposed Tonkin's motion to amend her complaint on the grounds that Tonkin was procedurally barred from asserting the retaliation claim and that the court lacked subject matter jurisdiction to hear the claim. (JA 73-74). Shadow Management raised the very same arguments on summary judgment (JA 169 and 172) and twice for judgment as a matter of law at trial (JA 263).[15] Post-trial, Shadow Management moved the District Court for alteration/amendment of its judgment, new trial, and/or reconsideration of its past

---

[15] *See* footnote 2, *supra*, and accompanying references to trial transcript.

rulings on failure to exhaust under Rules 12(b)(1), 50 and 59 (*See generally* JA 212-220). In short, Tonkin's failure to exhaust administrative remedies for her retaliation claim precluded her from asserting or recovering on that claim whether on jurisdictional or other grounds because those grounds were squarely before the District Court at all phases of the District Court proceedings.

To reiterate, Tonkin did not allege retaliation in her EEOC Charge despite alleging in her amended complaint that she had knowledge of the alleged pre-charge adverse employment action underlying that claim months before filing her EEOC Charge. (JA 148). This is not a case like *Arbaugh* or *Zipes* in which Tonkin filed an <u>untimely</u> administrative charge. <u>Tonkin filed no charge for retaliation</u> and her pregnancy discrimination claim was made on different facts and asserted a different theory of liability. Therefore, Tonkin <u>never</u> exhausted her remedies; with assistance from her counsel, she filed an EEOC Charge for pregnancy discrimination <u>only</u>, and she executed that charge under penalty of perjury, representing that the facts stated therein were complete and accurate to the best of her knowledge. There is no issue of equitable relief before the Court (waiver, equitable tolling, etc.) that would excuse Tonkin's failure to exhaust remedies. She and her counsel made a choice, and Title VII requires them to live with that choice. Because Tonkin did not exhaust remedies for her retaliation claim, Shadow

Management is entitled to affirmance on all grounds it asserted before the District Court and not just the single ground ruled on by that court.

## CONCLUSION

Jordan Tonkin asks this Court to change decades of settled law in the Fourth Circuit to reverse a correct ruling of the District Court in her matter. She asks this Court to apply law that is factually and legally inapposite to the facts of her matter, and she asks this Court to eschew a soundly formed body of Title VII jurisprudence in favor of the law of circuits whose analysis disagrees with the Fourth Circuit. Shadow Management asks this Court to decline these requests and affirm the District Court's correct ruling that Tonkin's failure to exhaust administrative remedies merits dismissal of her retaliation under Rule 12(b)(1), and additionally or in the alternative, on the grounds raised but not ruled upon by the District Court.

Tonkin's retaliation claim was not untimely charged to the EEOC; she simply did not charge retaliation at all, circumventing Title VII's notice and conciliation provisions. Her uncharged claim for retaliation did not relate back to an earlier charge of discrimination because the events giving rise to it occurred pre-charge, nor did it arise out of a reasonable EEOC investigation because it was a known claim alleging based on different alleged facts and a different theory of liability. The District Court did not rule prematurely on an open issue of fact;

38

Tonkin's case was tried to a jury and the District Court dismissed on Rule 12(b)(1) grounds after all open issues were resolved.

Accepting Tonkin's arguments would sweep away Title VII's mandatory administrative charge filing requirement and obliterate its notice and conciliation goals.

The District Court's ruling in this matter was proper and should be affirmed on all grounds asserted by Shadow Management. Tonkin's failure to exhaust precluded her assertion of the retaliation claim in District Court, whether on jurisdictional or procedural grounds that were raised by Shadow Management of every stage of District Court proceedings.

Dated this 23rd day of February, 2015.

Respectfully submitted,

s/ Christopher S. McDonald
Christopher S. McDonald, Esquire
Richard J. Morgan, Esquire
McNair Law Firm, P.A.
1221 Main Street, Suite 1800 (29201)
Columbia, South Carolina
803.799.9800
803.753.3278 (Facsimile)
cmcdonald@mcnair.net
rmorgan@mcnair.net

Attorneys for Appellee

39

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. <u>14-2219</u>        **Caption:** <u>Jordan Tonklin v. Shadow Management, Inc.</u>

## CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[✓]   this brief contains _____9,447_____ [*state number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[ ]   this brief uses a monospaced typeface and contains _____ [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[✓]   this brief has been prepared in a proportionally spaced typeface using <u>MS Word 2010</u> [*identify word processing program*] in <u>Times New Roman, 2010</u> [*identify font size and type style*]; **or**

[ ]   this brief has been prepared in a monospaced typeface using _____ [*identify word processing program*] in _____ [*identify font size and type style*].

(s) <u>Christopher McDonald</u>

Attorney for <u>appellee</u>

Dated: <u>2/23/15</u>

# CERTIFICATE OF SERVICE

I certify that on ___2/23/15_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Lovic Alton Brooks, III, Esq.
Direct: 803-254-5300
Email: lovic.brooks@janiklaw.com
[COR NTC Retained]
JANIK LLP
P. O. Box 136
Columbia, SC 29202-0136

/s/ Christopher McDonald
_____
Signature

2/23/15
_____
Date